The complainants are the children of David Dubose, who died intestate, in 1817. The defendant, M. James, administered on his estate. A part of the estate consisted of a tract of land of four hundred and fifty acres, situate on Half-way Swamp Creek, in Sumter district. Prior to *56 June, 1822, the defendant, James, filed his hill against the complainants, who were infants, alleging that it would he beneficial to the estate, to sell this tract and purchase other lands, and praying that he might he authorized to sell said tract, at four dollars per acre. Answers were duly filed; a report made recommending that the prayer he granted, and the report confirmed on the 19th June, 1822. Perhaps it is proper here to state, that M. James was, at that time, the surviving trustee to the marriage settlement of Robert Brailsford, and Elizabeth James, his former wife, by which her estate was settled to their joint use, during their joint lives, then to the use of the survivor, and on the death of the survivor, to the children of the joint marriage. About the period of the proceedings last mentioned, Robert Brailsford took possession of a tract of 280 acres, being part of the above tract of 450 acres, which James was authorized to sell, and cultivated the same, with the ne-groes of the trust estate, until his death in 1826. In the mean time, James had purchased for the estate of Dubose, the Manning tract, which he had proposed to substitute for the tract which this court had authorized him to sell. On the 11th July, 1826, M. James filed his bill against the children of Robert Brailsford, setting forth the proceedings and order of June, 1822, and that in pursuance of said order, and in compliance therewith, he had sold 300 acres to Robert Brailsford, for $850, which was to be paid in twelve months, with interest from 1st January, 1822— that Brailsford occupied and cultivated the land for the last five years, but had recently died without paying the purchase money. The bill then set forth the marriage settlement, and that the complainant, M. James, “was desirous that the said contract should be sanctioned, which was a beneficial one to the said trust estate. But owing to his being a trustee in the deed referred to, and administrator on the estate of David Dubose, and commissioned by this court to effect a sale of the land, and owing to the said contract not being reduced to writing, and the minority of the children of the said Robert Brailsford, he is unable to effectuate said sale and contract, without the agency and authority of this court.” The bill substantially charged, that the land had been purchased for the benefit *57 of the children, and would now be beneficial to them, and prayed that it might be confirmed; and that the court would direct an application of so much of the settled trust estate, as would pay the purchase money and interest, or that the said trust estate might pay the rent of said land, the contract be rescinded, and the complainant, James, be authorized to sell to others. After a reference to the commissioner, he reported the facts, and concluded with a recommendation, “that M. James, who is trustee of the said estate, be allowed to retain the sum of $800, with interest from 1st January, 1822; and that he do execute a deed of conveyance of said land, to the children of said Brailsford mentioned in the said bill, and that he also have the same recordedwhich report, on 23d February, was duly confirmed. The deed was not executed, because, as M. James says in his answer, he was unable to find the deed from W. J. Rees and R. S. Moore to David Dubose, or the record of it, although both Rees and Moore, when applied to, assured him that they had executed such deed. He also states, that in 1827, having accounted under the order of this court for his administration on D. Dubose’s estate, he surrendered to the complainant, D. St. Perre Dubose, the control and management of the property, and that he, James, “ as trustee to the estate embraced in the marriage settlement of Brailsford and wife, frequently applied to the said D. St. P. Dubose, and urged him to procure from the said Moore and Rees, some such instrument as would perfect the title in the estate of the said D. Dubose, and that an unobjectionable title might thus be secured for the trust estate.” In this doubtful condition, the matter rested for four or five years, when the land ceased to be cultivated, and was abandoned by the trustee and cestui que trusts, but he states, he cannot deny that he and they remained in quiet possession of the land, until 1831 or 1832. In the spring of 1834, Thomas C. Richardson having caused a survey to be made of his lands, it was discovered that the lands purchased by D. Dubose, from Moore and Rees, were included in an elder grant to Comfort Strange, under whom, says M. James, Thomas C. Richardson claimed; whereupon, he, the trustee, (who had previously informed the complainants, that the. trust estate of Robert Brailsford *58 could not be burtliened with lands, the title of which was defective,) “ no w explicitly notified him that the estate of which he was trustee, could not take land from the estate of D. Dubose, to which there was not, in said estate, the shadow of title and the said trustee and cestui que trusts then relinquished and abandoned the land.” In the former suit by these complainants, against James, as administrator, a decree had been rendered in favor of the administrator, for the sum of $2138, with interest from 1830. In April, 1836, execution was lodged. On 23d May, 1837, this bill was filed against M. James and the children of Robert Brailsford, alleging among other things, that the said trustee had promised that the said sum of $800, with interest from 1st January, 1822, had been credited, or should be credited, on the said execution, and praying to have the benefit of the decree of June, 1827, and that the amount due, may be paid them by the said M. James and the other defendants, or credited on the execution in favor of the said M. James.
The answer of M. James, among other matters, denies “that he ever informed the complainants that he had credited the money for which the said land was sold, on the execution; but he may, and believes he did mention to them, that he intended to credit the sum, if good title could be made.”
•By an order heretofore made in this cause, the commissioner was directed to enquire, among other things, “whether the estate of David Dubose had procured a good title to be made to the said land, to M. James, trustee, <fec., or whether the said estate is able to make, or procure to be made, good titles for the same.” The report of the commissioner accompanies this decree. It is there stated, that the complainant gave in evidence, a receipt of Thomas C. Richardson, dated 10th December, 1836, for $650, being for the land specified in the order of reference; also, a conveyance of Thomas C. Richardson, to M. James, trustee of the Brailsfords, for the same land, dated 30th Dec., 1837; the due execution of this deed, was proved by one of its subscribing witnesses, but not the delivery to, or acceptance by M. James. It is first proper to consider the claims of the complainants on M. James, and this is, per *59 haps, the more natural course, as he unites with the other defendants, in urging that the complainants have no right, as against those other defendants, under the decree February, 1827, not being party or privy thereto. Adopting, as correct, the statements of M. James, in his bill of 1826, it appears to the court that he must, himself, be regarded as the purchaser at his own sale, under the decretal order of June, 1822. Whatever irregularity there might be in' this, it is not a matter of which lie would have a right to complain, and particularly, after the order of 1827, procured at his instance, sanctioning the irregularity, at least so far as to bind him. This is certainly the view most favorable to Mr. James, and is the ground on which, so far as the Court can understand, he desires to rest his defence. It might be, and it was urged, with much force, that as administrator, or representing the interest of the minor children of David Dubose, he should not have brought the land into market until he had ascertained the title. He should not hare incurred the risk of exposing a defective title;' and much less should he have sold the lands, delivered up the possession, and purchased other lands for the estate of Dubose, leaving that estate exposed to the chances and delays of litigation. It is difficult to break the force of the argument, but upon the presumption that Mr. James knew the title of the estate of Dubose, and was willing to assume the responsibility of maintaining it; that he purchased and took possession with the abstract in his hand, and was willing to assume the character and obligations of a purchaser in that situation. When it is recollected the land was sold under a decree of this Court, to which the purchaser was a party, and that in the progress of the proceedings, the title might have been investigated, his taking possession may be regarded as a waiver of all objections, and an acceptance of the-title. (3 P. Wms. 193. Colcroft vs. Roebuck, 1 Ves. Jr. 226 ; Sug. Vend. 227, N. R.) But, according to the statement in the bill of M. James the possession under his purchase wras for five years prior to July, 1826, and it certainly was continued for about five years more after that period. Under ordinary circumstances this possession would perfect a title against all parties not under disability, and would at that time *60 have justified a decree for specific performance at once without a reference as .to the title. Fleetwood vs. Green, 15 Yes. Jr. 594. But in 1831 or 1832, after a possession under the purchase for ten years by Mr. James, as representing the estate of Dubose, and as purchaser, altogether of about fourteen years, the land is abandoned and the contract given up, because the purchaser had been unable to find the conveyance or record of conveyance from Messrs. Rees and Moore to David Dubose, although those gentlemen uniformly assured him that such conveyance had been duly made, and interposed no claims to the lands. Some-two or three years after this time, it was ascertained that this land, or nearly all the tract, was covered by a grant to Comfort Strange, under whom Thomas C. Richardson claimed the land, and in the answer of the defendant the right of the complainant is resisted on the ground of this elder and paramount title. At the investigation before the commissioner, the conveyance of Thos. C. Richardson was produced and tendered.
It is hardly necessary to review the circumstances which induced the conclusion of the Court, that it is sufficient for the complainants to be able in this case to mate a title at the time of the decree. Sudg. Vend. 431, 9th ed. But it is insisted that the report of the commissioner discloses a state of facts which shews that the complainants cannot make a good title, because the title of Comfort Strange is proved to have been in John P. Richardson, deceased, and no evidence is given of a partition between his divisees. The answer rests the defence in the outstanding title of Thomas C. Richardson. If a conveyance from him alone had been produced, it is not certain, under the circumstances, the complainants could be required to meet this new objection. If exceptions are taken to the report, that a good title can be made, and are overruled, other objections cannot be made. Sugd. 221. But it was said by the Ld. Chief Baron in Warren vs. Richardson, (Y. 1,) cited Sugd. 225, that although the defendant had by his conduct waived his right to call for the title, yet for the purpose of settling the conveyance a deed is produced which shews a bad title, a specific performance will not be decreed. “ It would be a great hardship upon a party, to force him to *61 accept a title which was ascertained to be defective.” Giving to the defendant the full benefit of this rule, is the title ascertained to be defective'! John P. Richardson has been dead about 29 years. No claim has been presented or interposed by any person claiming under him, except Thomas C. Richardson. It is not proved, nor is it suggested that any disability has existed, except as to him. So far then as appears in evidence the possession alone of the complainants and their ancestor, vested in them all the title which the defendant was authorized to require, unless it could be defeated in consequence of the minority of Thomas C. Richardson. This defect has been cured.
It is ordered and decreed, that the complainant deposite with the commissioner the conveyance of Thos. C. Richardson, to be delivered to M. James. It is further ordered that the sum of eight hundred dollars, with interest from 1st January, 1822, be credited on the execution of the defendant, M. James against the complainants, and that the said defendant, M. James, be perpetually enjoined from proceeding on the said execution except for the difference. Finally it is ordered, that as to the defendants, Win. L. Felder, Julia M. Felder, Theodore W. Brailsford, and Joseph Bailsford, the bill of the complainants be dismissed without costs.
The defendant Mathew James appealed from the above decree on the following grounds.
1. Because the said complainants have no right under their said bill to claim the benefit of the order in the case of M. James, trustee, vs. the children of Brailsford, they, the said complainants, being no parties to the same.
2. Because it was impossible to carry into effect the order of Febuary 1827 directing the said M. James to execute a conveyance of the said land to the children of Brails-ford, the title to the said land never having been in the said M. James.
3. Because his honor erred in deciding that the said M. James must be regarded as a purchaser at his own sale under the order of 19th June 1822.
F. J. Moses for the motion;
Mr.- — , contra.
4. Because his honor erred in decreeing the said M. James to be liable under the said bill, when the said complainants, by said bill, seek relief against the said M. James only as trustee and the said cestuique trusts.
6.Because in the year 1827 the complainant D. S. P. Dubose in his own right and as guardian of his sister, Ann Dubose (now Brailsford) assumed the entire management and control of the estate of David Dubose, their father, and to the time of filing the said bill or to December 1836 took no step or measure to perfect the title to the said land.
6. Because the said Mathew James would have been acting with bad faith as trustee to the estate of Brailsford, if he had executed a conveyance for the said land believing that the title was not in the estate of David Dubose.
7. Because to decree a specific execution of the contract for sale under the said bill would be unequitable under all the circumstances.
8. Because the estate of the said David Dubose was not able, at the time of the filing of said bill, to make a good and perfect title to the said land.
9. Because there was no proof in compliance with the order made in the said case, that the estate of David Dubose had procured good titles to the said land to the said M. James, trustee of Julia Felder and Theodore and Joseph Brailsford, or that the said estate was then able to make good titles for the same.
10. Because his honor erred in decreeing interest as well after as before the said land was abandoned, by the said M. James and the Brailsfords.
11. Because the decree of his honor is in other respects against equity and justice.